We'll turn to the next item on our calendar, which is HDI Global v. Phillips 66. Good morning, counsel. Counsel, you may proceed. Good morning. My name is Mike Noser, and I'm here on behalf of Appellant Gerling Global. Gerling disagrees with many parts of the arbitration panel's ruling, including its interpretation of the contract. But we understand that that's not a basis to vacate an award. We also recognize the arbitrators. We've been arbitrating in front of them for over seven years, and we have never challenged an award before. Well, can I just say, one of the reasons may be that you have an agreement that expressly prevents you from bringing an appeal, right? No, Your Honor, I don't believe that. Any decision in our agreement says that any award that is in manifest disregard of the law is not final. Well, wait. The decision and award of the panel will be non-appealable, final, and binding as to coverage. Isn't that pretty clear? I don't believe, Your Honor, that we have taken the position either side has taken the position in this case that that forecloses our rights under the Federal Arbitration Act. What does it? I mean, I mean, people waive their right to appeal criminal cases and they're enforceable, you think? And that's true in almost all circumstances, even if they think an error was made. Well, I don't know that that's even an argument that has been made by my opponent in this matter. Well, I'll ask him when we get there. That we share that interpretation. It certainly wasn't an argument that was made before Judge Berman. Your Honor, what we're challenging is the fact that the arbitration panel has plainly stated that they will not enforce at least two conditions of what we're calling the end-use exception. Both parties and the arbitration panel call it the end-use exception. These claims are pollution claims. That's not disputed. There is a pollution exclusion that is binding and covers the matter. That is also not disputed. The issue in dispute is whether the end-use exception applies to reinstate coverage that is otherwise excluded by the pollution exclusion. The end-use exception to the pollution exclusion has three conditions. The arbitration panel concedes this or has ruled as such, and my opponent concedes this as well. The three conditions are Phillips 66 liability must arise out of the end-use of its products. Also, the liability must arise after Phillips 66 has relinquished possession of the products. And finally, and also, Phillips 66 liability must arise away from its own premises. The court noted that Phillips 66 has not provided any evidence in the arbitration in Phase 3 about end-use or the fact that the products have left, that they transferred the products to third parties. Wasn't that assumed since the pollution was not at the site of the company, that it was off-site, that it was done by someone else who was an end-user? Well, I think it was assumed, but it should not have been assumed. We've been asking for that information, and we were told it was too difficult to provide. That's in the panel's record, in the panel's award, that we were told by Phillips 66 that that information about where they transferred it to and when they transferred it was too difficult to provide. And we said that may be so, but the conditions of the exclusion require that that information be provided. The panel did what we feel is manifest disregard of the contract by sidestepping those conditions, saying that they're commercially impractical to apply, that it was too difficult for Phillips 66 to know who its products went to, and it would be too difficult for Phillips 66 to know how those products were used, end-use, after the— that it wasn't used on their own site. Isn't that—doesn't that meet the condition for the exemption? I think that there was substantial evidence in the record, as reflected in the arbitration panel's ruling, that that certainly wasn't true. The panel didn't make such a finding based upon any avairement of Phillips 66. What the panel just said is, is that they are going to—they're going to determine that it is not practical or commercial to enforce these conditions. And our view is, is that an end-use exception like this with three conditions, no matter how difficult to meet, no matter how difficult to achieve, no matter how difficult to establish, this is a sophisticated commercial company that signed a contract and has to abide by it. For all we know, 10 years ago or 20 years ago, when this policy was entered into, the understanding of the parties was that this exception was going to be a very rare thing, very difficult to achieve. And the arbitration panel said very plainly that it is impractical to require Phillips 66 to prove end-use that occurs out of its control and off of its property. And there is no way to interpret that statement other than that the arbitration panel decided not to apply a contract term. That's the only way to interpret that statement. Isn't it true that they, based on the claim, based on where the claim arose, where the pollution arose, that it was self-evident that it occurred not on this property by a different end-user? Isn't it self-evident? And do you have to prove things like that? Well, I certainly think the arbitration panel did not rule that it was self-evident. But even then, it still leaves the end-use exception because it also matters how the product is being used. And what the arbitration panel did is they dispensed with that requirement by conflating it with the same requirement as being off of its property. So what the arbitration panel said is its specific proof of a transfer away is unnecessary and impractical to require, but also impractical is to require that they prove the end-use because it was away from their property. I'm sympathetic that it's difficult to establish, but this is a contract provision that we agreed to. And commercial practicality doesn't weigh on whether the court or arbitration panel should enforce those words. Mr. Norris, you have to do more than articulate a mistake. You have to show that basically the panel intentionally sort of defied the law or sort of purposely misread the contract. Why isn't this just consistent with interpreting the provisions of the contract in a way that you don't like and which maybe isn't even the best, but nonetheless is enough to support affirming the award? My time is up. May I quickly respond to that? Of course. If it was just a matter, as I've begun, if it was just a matter of our disagreeing with the interpretation of the contract, we would not be here. It's because the arbitration panel specifically said it is commercially unreasonable to enforce these provisions that we're here. That's manifest disregard. But can I just follow that up? The panel basically was pointing to the to the policy to determine that these things were not necessary. And then they said that public policy considerations would support that interpretation of the policy. But aren't they arising out of to reach this conclusion? Not at all. With the arbitration panel, and I'll use my three minutes here or two of them, the arbitration, the arbitration panel did not interpret the end use language. It did not interpret the conditions in the end use exception. It decided that Phillips 66 would not need to meet that burden. It's undisputed on the record. And you can ask my opponent. He will acknowledge that there is no evidence in the record on end use. He can't point to any. He didn't have to provide it because the arbitration panel relieved him of that obligation. That's not interpreting a contract. That's failing to give it effect and failing to give a contract effect is manifest disregard. So you can retain your three minutes of rebuttal and we'll hear from Phillips and we'll ask him about evidence in the record. Good morning, counsel. Good morning, Your Honors. John Ellison on behalf of Appley Phillips 66 company. Contrary to the arguments you just heard on behalf of curling, the district court's opinion and the arbitration award below should be affirmed because the arbitration panel did not rewrite the pollution exclusion. And the panel did not base its decision on public policy alone, as Judge Sullivan just pointed out. And finally, the arbitration panel, in our view, correctly interpreted the exception to the pollution exclusion based on the evidence that was presented to it in phase three of this eight year long arbitration proceeding. Most fundamentally, our view is that Gurley is wholly unable to satisfy the extremely high standard that applies to. Efforts to vacate awards under the federal arbitration act. I mean, what what the standard really boils down to is, did the arbitration panel have the authority to decide that the issue that is being challenged and also whether they did so in a way that paid attention to the terms of the contract they were interpreting and applied them in the best way they thought was was proper. There is no dispute here that the tribunal here had the authority to decide this issue. Both the arbitration agreement and the terms of reference specifically identified interpretation of the blended pollution endorsement as one of the issues the arbitrators needed to decide with respect to the underlying claims. As to the manifest disregard of the policy's terms argument that Gurley has made, the panel determined based on the evidence presented to it, and I think it's important to emphasize that the only party that presented any evidence in phase three of the of this arbitration was Tosco, which is Phillips predecessor, both factual and expert. Gurley presented no evidence of any kind and also chose not to cross-examine any of our witnesses, so the record presented to the arbitrators in phase three is unrebutted and unchallenged, and that is what the decision is based on, and they found that the exception to the exclusion was met by the proof that we presented on behalf of Tosco, and that's why they ruled as they did. Gurley's appeal, in essence, really amounts to a disagreement that the exception to the exclusion was misinterpreted and interpreted too broadly by the arbitrators. That is not a sufficient basis on which to obtain a vacature of an arbitration award under the section 10A4 of the Federal Arbitration Act. I direct your Honor's attention to the opinion that Judge Pooler wrote less than a month ago on February 22nd in the Seneca and Nation of Indians v. New York case, where she laid out the very heavy standard that a party challenging an arbitration must meet to overturn it under the Federal Act, and I'll quote. Look, I think we know the standard. We're clear on the standard. It is a high standard. That's the price you pay when you go to arbitration. If this had been started in a district court, you could have appealed to your heart's content, but this is a real high standard where they could have appealed to their heart's content. But what about the claim that Phillips offered no evidence that the pollution activities in the New Jersey and Orange County claims arose out of the end use of the gasoline? What's the response to that? Your Honor, that argument is really an argument that they don't like the way the panel interpreted end use. And this goes back to order number one that was issued by the panel in June of 2013, when the arbitrators made preliminary guidance for the rest of the arbitration proceeding and how evidence needed to be presented. And in that process, the panel did decide that there were three elements of proof we needed to fall within the exception to the exclusion. Point two was that we had—Tosco had to have released control of its product before the alleged liability event occurred, and three, that the use occurred away from the premises owned, rented, or controlled by Tosco. As to the end use prong, Judge Sophia, on behalf of the panel, wrote, and this is a quote, end use includes the full range of end uses of the completed product per n MTPE-treated gasoline, close per n, not just used by an automobile driver. And that is reflected in the record at order number one at page 32, which is page 184 of the appendix. And what the court did—I'm sorry, what the arbitrators did there was reject the argument that the only end use that applied to Tosco's product, MTPE gasoline, was that it had to be used in an automobile by a driver of some sort. Our point was that end use for Tosco is anything that occurs after Tosco releases the product into the stream of commerce and no longer has control over it or the ability to say what is done with that product. And the panel accepted that argument. Now, Gurley may not like the argument and not like the decision on that issue, but that does not absolve them or provide them a basis under the Arbitration Act to seek a vacature award. That is where— I'm sorry to interrupt. That's fine. Your point is that that interpretation makes the meeting of that proof self-evident. It does. And we also—also in this record, and I do not have a specific page site for you, but one of the things that distinguishes Tosco from an entity like Exxon or Shell is the way they operated the business at the time that these claims arose. Tosco was a merchant refiner. They didn't have a network of retail gas stations through which they sold their product. They sold their product to wholesalers, and wholesalers then sold the product directly to retail outlets. So Tosco released control of its product at least two steps away, factually, from when the alleged releases occurred that led to these claims for liability. So, Your Honor, in a sense, it is self-evident that Tosco had relinquished control, that the end use of its product had terminated as far as Tosco was concerned, and finally, that all of these events occurred on property that was neither owned, rented, or controlled by Tosco. That evidence has been in the record through all three phases of this arbitration. It has not been challenged by Gerling either factually or through expert evidence, and that is the basis over eight years that this panel, that led them to the decision that they issued in Award No. 3. So just to sum up, essentially what Gerling is arguing is an effort to challenge the panel's interpretation of the contract. And Judge Sullivan, as you said before, in the portions of the opinion they cite to, Judge Sophia, on behalf of the panel, is simply walking through the language of the exclusion, the exception to the exclusion, yeah, I'm sorry, and in doing so speaks to certain facts. And on the public policy point, as Judge Berman also correctly noted, he was just referencing that as further support for the decision he reached based on the panel's interpretation of the language of the exception to the exclusion. So for those reasons, Your Honor, Phillips 66 respectfully requests that you affirm the decision of Judge Berman and the third partial final award and reject the appeal of Gerling. And if Your Honors have no further questions, I will yield the rest of my time. I have one. You previously moved and have made additional noise about sanctions here. And you didn't say anything today about that, and I guess I'm curious, do you still think this is sanctionable? We did. That motion was denied without prejudice, so I thought it was off the docket for today. But our view is that given the extremely high standard for this type of relief that is being sought by Gerling, that this appeal doesn't even come close to satisfying it. The appeal waiver, sorry to interrupt you, but time is short. The appeal waiver does allow an exception for fraud or manifest error. They're arguing manifest error. You're saying that there's no way they could honestly believe that this was merely manifest, that this was manifest error as opposed to just differing interpretation? I think that's absolutely what we're saying. If you read order number one in the record and then you read the third partial final award authored by the panel, it's collectively about 150 pages of analysis. And most of it deals with analyzing and parsing the words of the pollution exclusion and the exception to that exclusion. We don't think that there is a good faith basis to argue other than you might disagree with the decision that they reached. But to say that this panel disregarded the contract and didn't apply it scrupulously as they have for eight years, I think is unfair to the arbitrators. And we do think it is sanctionable. Thank you. Thank you, counsel. Mr. Kerzer, you've retained three minutes for rebuttal. Thank you, your honor. A question was put directly to Mr. Ellison. What is your evidence of end use? And he did not say he put in any evidence of end use. As the arbitration panel found, they have no evidence of end use. Well, don't we have the evidence that the pollution occurred in Orange County and some other places that were not at Tosco's site? Isn't that evidence that it was somewhere else? But it's not evidence of end use. And this is our entire problem. And I think that the argument of Mr. Ellison has just established what our point is, is that they've conflated or equalized end use and off of their own property. Those are three. There are three separate conditions under the end use exception. End use is a distinct condition separate from being away from Phillips 66's property. And what Phillips 66 is saying and what the arbitration panel did was equate the two of them. But they are expressly different conditions. What the arbitration panel has said is that in effect, we're not going to apply end use. We're going to say, as your honors have said, it's self-evident that it was end use merely because it left Phillips 66's possession. But that's not a proper ruling. But it seems like this really turns on the panel's interpretation of the term end use, which is very broad and makes it not a heavy lift to prove. But that's really an interpretational problem, not a proof problem, right? No, because end use in this context has no meaning other than condition two. End use is condition one of the end use exception. Counsel, how would Phillips go about proving end use to your satisfaction? What would they have to show? In this particular case with MTBE losses sold, with gasoline sold to many people, it would be difficult. Agreed. But the policy wasn't written thinking about this loss. If it was one large loss to one person who they sold to, which would have been within the contemplation of the parties when they wrote the policy, then it would be very easy to prove how its gasoline was used. What the panel is saying is under the circumstances of this particular claim, it's too difficult for Phillips 66 to meet the burden. That's because it went from Tosco to retailers, as counsel explained to us a moment ago. And the retailers were, there were many of them. And then from the retailers to the ultimate end user, the car driving person. How do you prove that? There's no evidence in the record that the liabilities arose from the end use. And that's been, I think, admitted on my opponent's argument. Okay. Well, we have your arguments, both of you. Thank you for a very lively argument. Very helpful. Well-reserved decision. Thank you. Thank you both. Thank you, Your Honors.